IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDRICK E. ROBISON, | No. C 09-2202 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| JAMES WALKER, Warden, | |
| Respondent. | |

## INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the seven claims in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2007, a jury in Sonoma County Superior Court convicted petitioner of unlawful possession of a firearm by a felon (Cal. Pen. Code § 12021(a)(1)), possession of an assault weapon (Cal. Pen. Code § 12280(b)), unlawful possession of ammunition (Cal. Pen. Code § 12316(b)(1)), burglary (Cal. Pen. Code § 459), forgery (Cal. Pen. Code § 470(d)), grand theft of property of a value of over $150,000 (Cal. Pen. Code §§ 487(a), 1202.6(a)(2)), and receiving stolen property (Cal. Pen. Code § 496(a)) (Ex. C at 5419-5424). The trial court sentenced petitioner to an aggregate prison term of six years and eight months in state prison (*id*. at 6022).

On October 29, 2008, the California Court of Appeal affirmed the conviction and

sentence (Ex. E at 1). The California Supreme Court summarily denied petitioner's petition for review on January 22, 2009 (Ex. G).

The following description of the evidence presented at trial is from the opinion of the California Court of Appeal (Ex. E at 1-6). In 2001, petitioner began dating Darcy Burgarella. Burgarella lived with her daughter and her adult son, Ricardo Huerta, in a home Huerta had purchased in 1999 in Santa Rosa. Huerta suffers from cerebral palsy, which confines him to a wheelchair and limits his ability to communicate. Huerta requires continuous care, and among other things, Burgarella opens Huerta's mail for him. Huerta purchased the Santa Rosa home with the proceeds of a personal injury lawsuit. In 2002, a $240,000 loan was taken out on Huerta's home. A deed of trust securing the loan was recorded by Greenpoint Mortgage Funding, Inc. ("Greenpoint"), and the promissory note for the loan was signed by Burgarella on behalf of Huerta.

Petitioner moved in with Burgarella and her family. Petitioner had read something in a magazine about legal maneuvers involving copyrighting one's name. Petitioner and Burgarella purchased a book entitled "Cracking the Code," which, along with various seminars and instructional videos, described how a person could make a loan disappear by copyrighting one's name. Using the forms from this book, petitioner and Burgarella filed a fictitious business name statement and took steps to copyright her name, even though it is not legally possible to do so.

In February 2003, petitioner and Burgarella began sending Greenpoint a series of documents generated from forms contained in "Cracking the Code," in which they claimed that Greenpoint, by using Burgarella's name without permission, had committed copyright violations amounting to $4 million. One document entitled "Respondent's Private Offer of Performance, Tender of Payment and Discharge of Alleged Monetary Obligation," was sent on February 21, 2003 and purported to discharge the $240,000 loan. Other documents stated that Greenpoint's lack of response had resulted in an agreement (through default) under which Burgarella was granted a "security interest" of $500,000 for each unauthorized use of her name, and that the loan on the Santa Rosa property had therefore been extinguished. Burgarella signed these documents, and petitioner's signature appears on the affidavits of mailing attached to some of

them.

On March 3, 2003, Greenpoint sent a letter to Huerta describing Burgarella's correspondence as "legal nonsense" and reminding him of his obligation to continue making timely payments. On March 28, 2003, Greenpoint sent a letter directly to Burgarella demanding that she cease further communications.

On July 1, 2003, Greenpoint sold the loan on Huerta's property, as well as several other loans, to Washington Mutual. Later, Huerta's loan was pulled out of the sale and retained by Greenpoint, which sent a letter to Huerta advising him that he should continue to make his monthly payments to Greenpoint. Meanwhile, petitioner had filed a civil lawsuit against a deputy district attorney seeking damages for alleged copyright violations for the unauthorized use of petitioner's name in connection with a previous prosecution on unrelated charges. The court dismissed the claim for copyright infringement of petitioner's name as non-cognizable.

On February 25, 2004, petitioner and Burgarella submitted a document entitled "Substitution of Trustee" to the Sonoma County Recorder's Office. This document purported to substitute Burgarella as trustee on the Greenpoint trust deed. The document was signed by Burgarella, claiming to have power of attorney for Greenpoint. Petitioner witnessed this document. At first, the recorder's office rejected the document for filing because the Chief Deputy Recorder erroneously believed the power of attorney needed to be filed as well. The substitution was accepted for filing the following day. Although the Chief Deputy had never seen a commercial lender substitute a private individual as trustee, the recorder's office does not attempt to verify the signatures on documents or otherwise ascertain their authenticity or their legality.

On February 27, 2004, Burgarella and petitioner returned to the recorder's office and filed a document purporting to be a "Full Reconveyance" of the property from Burgarella, the new trustee, to Huerta. However, Greenpoint had not in fact granted Burgarella power of attorney, consented to her substitution as trustee, authorized her to reconvey the property to Huerta, or otherwise forgiven the loan.

In April 2004, petitioner and Burgarella applied for a loan of $270,000 with World

Savings, using the Santa Rosa property as collateral. The loan application listed a $20,000 personal loan as the only debt outstanding on the property, which had an appraised value of $441,000. First American Title acted as the escrow agent and provided title insurance on the property to World Savings. First American Title conducted a title search that showed the $240,000 Greenpoint loan had been paid and the property reconveyed. Accordingly, the loan was not listed in the title report provided to World Savings, which approved the $270,000 loan and wired $245,391.28 to a Washington Mutual bank account held by Burgarella and Huerta. Had World Savings known about the outstanding Greenpoint loan, it would not have loaned $270,000 on the property.

On September 23, 2004, Greenpoint filed a notice of default, after it stopped receiving payments on the loan. The recorder's office contacted First American to report the default notice and certain discrepancies in the records. When First American Title learned that the $240,000 Greenpoint loan had not been paid off, it contacted the Santa Rosa Police Department. Santa Rosa Police Detective Eric Goldschlag began an investigation.

On October 7, 2004, Burgarella went to a Washington Mutual bank branch and said she wanted to withdraw all the money from her account. The teller did not have that much cash on hand, so Burgarella ultimately withdrew $1,000 in cash and obtained two cashier's checks: an $84,155.89 check payable to her and a $20,000 check payable to petitioner. Detective Goldschlag obtained an order to freeze the bank account (which by then contained less than $3,000) and arranged a meeting with petitioner and Burgarella outside their home. He searched them under the authority of a warrant and found the cash and cashier's checks in Burgarella's purse. Petitioner explained that Burgarella had authority to act as trustee on the Greenpoint mortgage because it had been "tendered," or paid with a "negotiable instrument," and that Greenpoint had not responded to "an offer of remedy to clear title." Petitioner and Burgarella admitted that they had prepared the Substitution of Trustee and Full Reconveyance and had filed them with the recorder.

A search warrant was executed at the Santa Rosa home. Police found a locked safe and opened it after petitioner provided the combination. The safe contained several documents

4

relating to the property, including copies of the Substitution of Trustee and Full Reconveyance that had been filed with the recorder, as well as two semi-automatic weapons and ammunition. Petitioner told Detective Goldschlag that the safe belonged to him and had nothing to do with Burgarella. Petitioner had previously been convicted of a felony.

Petitioner was charged with unlawful firearm possession by a felon, unlawful possession of an assault weapon, unlawful possession of ammunition, commercial burglary, forgery, grand theft of property valued at over $150,000, and receiving stolen property. Petitioner represented himself at trial. His primary defense was that he had not committed the theft-related offenses because he mistakenly believed the process he employed was a legal way of extinguishing the Greenpoint loan. He did not take the stand during his trial. The jury convicted him of all charges, and the court determined that he had suffered a prior strike conviction. Petitioner was sentenced to an aggregate prison term of six years and eight months.

**ANALYSIS**

**A.   STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at

412-13.  A state court decision is an "unreasonable application of" Supreme Court authority under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his Fourteenth Amendment right to due process was violated when the trial court mistakenly instructed the jury that in order to constitute a valid defense, a mistake of fact had to be "reasonable"; (2) his Fourteenth Amendment right to due process and right to present a defense were violated when the trial court refused to enter the book "Cracking the Code" into evidence; (3) his Fourteenth Amendment right to due process and right to a jury verdict were violated when the trial court accepted Detective Goldschlag as an expert and permitted designated expert Ron Arlas to give an opinion as to petitioner's guilt; (4) his Fourteenth Amendment right to due process was violated when the trial court allowed Detective Goldschlag and Arlas to testify as expert

6

witnesses, even though the prosecutor had failed to disclose that he would seek an expert designation; (5) his Fourteenth Amendment right to due process was violated when the trial court admitted a handwritten list of financial goals signed by petitioner under his Muslim name; (6) his Fourteenth Amendment right to due process was violated when the prosecutor committed prejudicial misconduct during his closing argument; and (7) his Fourteenth Amendment right to due process was violated because of the cumulative impact of the foregoing constitutional errors.

### 1.     Mistaken Jury Instruction

Petitioner claims that his Fourteenth Amendment right to due process was violated when the trial court mistakenly instructed the jury that in order to constitute a valid defense, a mistake of fact had to be "reasonable." The trial court modified jury instruction CALCRIM No. 3406 ("jury instruction") to include the "reasonable" language. The instruction given to the jury, as modified, stated:

> If you find that the defendant in good faith believed that he was legally entitled to file the Change of Power of Attorney, the Substitution of Trustee, and the Reconveyance Document and to apply for the loan through World Savings with no encumbrance listed on the property at 1912 Dennis Lane, *and if you find that belief was reasonable*, defendant did not have the specific intent required for the [theft-related charges] (Ex. A at 1478) (emphasis added).

The "reasonable" language was added to the jury instruction because the trial court believed the law, as set forth in *People v. Vineberg*, 177 Cal. Rptr. 819 (Cal. Ct. App. 1981), required such an addition (Ex. C at 4808-13). Petitioner alleges that this error deprived him of his constitutional right to due process because the jury could have found that petitioner's belief in the legality of his actions was objectively unreasonable, but nevertheless found that this belief was in good faith. By inserting a reasonableness requirement into the instruction, petitioner alleges that the trial court presented the jury with an instruction that effectively withdrew petitioner's sole theory of defense and lowered the prosecution's burden of proof on a critical element of the charges.

The Court of Appeal rejected petitioner's claim, finding any instructional error to be harmless (Ex. E at 6). As an initial matter, the Court of Appeal noted that the instruction mischaracterized the mistake as one of fact rather than law (*id*. at 8). The court found that the instruction was appropriate to the extent that it advised the jury that petitioner lacked the specific intent necessary for the theft-related offenses if he harbored a good faith belief that he and

7

1 Burgarella were entitled to file the substitution and reconveyance with the recorder's office
2 (*ibid.*). However, the trial court had mistakenly modified the instruction to require a
3 "reasonable" mistake (*id.* at 9). The Court of Appeal stated that *Vineberg* "recognized that a
4 defendant's subjective belief that he or she possesses a legal right may be so 'wholly
5 unreasonable' as to be bad faith. But it does not impose a separate requirement of objective
6 reasonableness when the defendant asserts a mistake of law that is otherwise in good faith"
7 (*ibid.*) (internal citations omitted). After finding that the instruction's requirement of reasonable
8 mistake constituted error, the Court of Appeal then determined that the error was not prejudicial
9 (*ibid.*). Petitioner could only have prevailed at trial if he acted in good faith, of which there was
10 "scant evidence", and any reasonable jury would not have found petitioner's belief in the legality
11 of his actions to be credible (*id.* at 9-10). Therefore, there was no reasonable probability that a
12 properly instructed jury would have accepted petitioner's mistake of fact defense (*id.* at 10).

13       For the reasons described by the state appellate court, there was no prejudice from any
14 constitutional error in the instruction. A habeas petitioner is not entitled to relief unless he can
15 show prejudice from instructional error, meaning that the error "'had substantial and injurious
16 effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637
17 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). There was not enough
18 evidence to support a finding of good faith. Greenpoint had advised Huerta (and in so doing,
19 Burgarella and petitioner) that payments on the loan remained due, notwithstanding the letters
20 and forms asserting copyright infringement. Greenpoint also directly advised Burgarella (and in
21 so doing, petitioner) that the documents she sent in an effort to extinguish the mortgage were
22 without any legal effect. Greenpoint did not grant Burgarella power of attorney, and Greenpoint
23 never gave Burgarella permission to execute documents, including the Substitution of Trustee
24 document that petitioner witnessed, in Greenpoint's name. As an additional piece of evidence
25 tending to show petitioner's lack of good faith, petitioner had previously filed a civil action in
26 Sonoma County seeking damages for copyright infringement on a theory similar to the one that
27 gave rise to Burgarella's claims against Greenpoint. That lawsuit was dismissed for failure to
28 state a cognizable cause of action less than two weeks before the Substitution of Trustee and Full

8

1  Reconveyance were filed with the recorder in this case. This dismissal would have put petitioner
2  on direct notice that his legal theory regarding copyright infringement had no merit.
3  Additionally, by convicting petitioner on the separate count of receiving stolen property, the jury
4  necessarily rejected his claim that he did not believe the property was stolen. The trial court
5  specifically instructed the jury that petitioner could only be found guilty of the receiving stolen
6  property charge if the jury found that petitioner "knew that the property had been stolen" (Ex. A
7  at 1468).

8  The record indicates that the jury would not have found petitioner to have acted in good
9  faith, a requisite element for the defense of mistake of law, even if properly instructed. As a
10 result, petitioner has not shown that he was prejudiced by any constitutional error in the
11 instruction, and he is not entitled to habeas relief on his claim.

12     **2.     Exclusion of the Book "Cracking the Code"**

13 Petitioner claims that the trial court's exclusion of the book "Cracking the Code" violated
14 his Fourteenth Amendment right to due process and right to present a defense.

15 "Cracking the Code" was a book purchased by petitioner and Burgarella (Ex. C at 4515).
16 Petitioner and Burgarella relied on the information within it in order to carry out their scheme
17 (*id*. at 4511). Specifically, the book contained forms that petitioner and Burgarella used,
18 including the Substitution of Trustee form that petitioner and Burgarella recorded at the
19 recorder's office (*id*. at 4510-12). Both the prosecutor and petitioner questioned Burgarella
20 about the book, and on cross-examination, petitioner showed Burgarella the book and had the
21 trial court mark the book for identification (*id*. at 4527). Out of the presence of the jury and
22 Burgarella, the prosecutor objected to the introduction of the book into evidence on the grounds
23 that the book had not been shown to him in advance, in violation of a pretrial order (Ex. C at
24 4546-48, Ex. E at 11). The trial court agreed with the prosecutor, and excluded the book from
25 evidence. Petitioner argues that the book was highly relevant to the issue of whether he had the
26 intent to break the law, and that exclusion of the book prevented petitioner from presenting his
27 entire defense (Compl. at 12-15).

28 The Court of Appeal agreed that the book was relevant to petitioner's defense (Ex. E at

9

1  11). However, because the trial court did not exclude the book on relevancy grounds, and
2  instead excluded the book because petitioner had failed to provide it to the prosecution as
3  required by the pretrial order, the Court of Appeal framed the issue as a question of whether
4  exclusion of the book was an appropriate sanction for violating the pretrial order (*ibid*.). The
5  Court of Appeal found that instead of excluding the book from evidence, the trial court should
6  have granted the prosecutor more time to review the book. However, the Court of Appeal found
7  that petitioner could not establish prejudice because it was not reasonably probable that
8  petitioner would have obtained a more favorable verdict if the book itself had been admitted (*id*.
9  at 11-12). Because Burgarella had already described the general content of the book and the
10 book's relevance to her and petitioner's plan, introduction of the book itself would not have
11 made the jury more likely to accept petitioner's defense (*id*. at 12). This error did not do
12 anything to change the fact that the jury could not have found petitioner to have acted in good
13 faith, thus making petitioner's defense untenable (*ibid*.).

14     In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must
15 show that the error was one of constitutional dimension *and* that it had "'a substantial and
16 injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting
17 *Brecht*, 507 U.S. at 623).

18     Exclusion of the book did not constitute constitutional error. "State and federal
19 rulemakers have broad latitude under the Constitution to establish rules excluding evidence from
20 criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotations and citations
21 omitted). In deciding if the exclusion of evidence violates the due process right to a fair trial or
22 the right to present a defense, the Ninth Circuit balances the following five factors: (1) the
23 probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is
24 capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or
25 merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Chia v.*
26 *Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004) (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th
27 Cir. 1985)).

28     The second and third factors – reliability and capability of evaluation by the trier of fact –

10

favor petitioner because the jury could rely on the text of the book to be an accurate indication of what the book said and the jury could evaluate the book itself.  However, the other three factors weigh against a finding of constitutional error.  The book itself was not very probative of the central issue because relying on a book is not a strong indication that petitioner had a good faith belief that his actions were lawful.  Most importantly, admission of the book itself was cumulative of the testimony Burgarella had already given regarding the contents of the book and her and petitioner's use of the book for their scheme.  In addition, portions of the book had already been admitted into evidence, because the Substitution of Trustee form petitioner and Burgarella filled out and submitted to the recorder was a "printout" from the book (Ex. C at 4511).  Finally, admission of the book did not appear to be a major part of petitioner's defense.  Petitioner's defense was based on several prongs, including his ability to successfully record the documents at the recorder's office and the fact that his efforts to secure the loan from World Savings were through the proper channels and above ground.  In balancing these five factors, exclusion of the book does not rise to the level of constitutional error.

However, even if the exclusion of the book were constitutional error, it did not have a substantial and injurious effect or influence in determining the jury's verdict.  *See Brecht*, 507 U.S. at 637.  As the Court of Appeal correctly found, with the rest of the evidence presented at trial, admission of this book would not have sufficiently rebutted the considerable amount of evidence showing that petitioner did not act in good faith.  As discussed above, moreover, the jury already heard ample testimony regarding the contents o the book, to which admission of the book itself would have added little.

Because exclusion of the book did not amount to prejudicial constitutional error, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

**3.    Detective Goldschlag and Arlas as Expert Witnesses**

Petitioner claims that his Fourteenth Amendment rights to due process and to a jury verdict were violated when the trial court designated Detective Goldschlag as an expert and permitted him to give an opinion as to petitioner's guilt.  Petitioner also claims that his rights

11

were violated when the trial court allowed expert witness Arlas to testify as to petitioner's guilt.

### A. Testimony by Goldschlag

Goldschlag was the Santa Rosa police officer charged with investigating the lending transactions leading to the charges in this case (Ex. E at 12). In addition to being a police officer, he had a real estate license and had investigated a number of cases involving property crime and fraud (*ibid*.). During the trial, after questioning Goldschlag on direct examination, the prosecutor asked that the court deem him an expert in both real estate and the investigation of real estate transactions, whereupon petitioner objected to such designation (Ex. C at 3845, Ex. E at 12). The trial court then reserved ruling on Goldschlag's status as an expert, indicating that it would consider the prosecutor's questions on an individual basis (Ex. C at 3852-54, Ex. E at 12-13). The prosecutor then proceeded to ask Goldschlag a number of questions concerning the conduct of a typical real estate transaction and the roles of the various parties involved, such as banks, mortgage brokers, trustees, and title companies (Ex. C at 3857-73, Ex. E at 13). Goldschlag then began testifying about his investigation into the transactions involved in petitioner's case (Ex. C at 3873, Ex. E at 13). At one point during his testimony, Goldschlag stated that "the fraud actually occurred when these documents, when the substitution of trustee and the full reconveyance were filed at the county recorder's office" (Ex. C at 3910). When the prosecutor asked Goldschlag about a document submitted as a defense exhibit and whether he had ever seen such documents in a real estate transaction, the trial court stated in front of the jury that it agreed with petitioner that Goldschlag was not an expert witness, but that it would allow limited testimony as to whether he had seen a document such as the one presented (Ex. C at 4054-4055, Ex. E at 13).

Petitioner argues that Goldschlag was impermissibly allowed to testify as an expert, and that his dual role as percipient witness and expert witness gave undue weight to his lay opinions and unfairly bolstered his credibility in the eyes of the jury (Compl. at 16-17). Petitioner also alleges that Goldschlag's testimony regarding when the "fraud actually occurred" improperly invaded the jury's province by concluding that a crime had occurred and that the crime was fraud (*id*. at 17-18).

1  The Court of Appeal rejected petitioner's claim because the trial court never deemed
2 Goldschlag an expert (Ex. E at 13). Instead, the trial court stated in front of the jury that it
3 agreed with defense counsel that Goldschlag was not an expert (*ibid.*). Because Goldschlag was
4 never deemed an expert, this case did not present any of the problems that could arise when a
5 witness serves a dual role as a percipient witness and court-sanctioned expert (*ibid.*). The Court
6 of Appeal also found that petitioner forfeited the right to challenge or appeal the testimony that
7 "fraud actually occurred" because he did not object to it during trial (*id* at 14).

8  To the extent petitioner's claim relates to the specific instance of Goldschlag's testimony
9 that "fraud actually occurred," petitioner's claim is procedurally defaulted. "[A] procedural
10 default does not bar consideration of a federal claim on either direct or habeas review unless the
11 last state court rendering a judgment in the case 'clearly and expressly' states that its judgment
12 rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citation omitted). In
13 addition, the United States Supreme Court has held that where the last reasoned opinion on a
14 claim expressly imposes a procedural bar, it should be presumed that a later decision summarily
15 rejecting the claim did not silently disregard the bar and consider the merits. *See Ylst v.
16 Nunnemaker*, 501 U.S. 797, 801-06 (1991). Thus, the California Supreme Court decision
17 summarily affirming the opinion of the Court of Appeal results in the California Supreme Court
18 maintaining the Court of Appeal's procedural bars.

19  The Ninth Circuit has recognized and applied the California contemporaneous objection
20 rule in affirming denial of a federal petition on grounds of procedural default where there was a
21 complete failure to object at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir.
22 2005). Because petitioner failed to object to Goldschlag's testimony that the "fraud actually
23 occurred" at trial, and the Court of Appeal explicitly noted this failure to object as the reason for
24 petitioner's forfeiture of the claim, (Ex. E at 14), petitioner's federal habeas claim relating to
25 such testimony is procedurally defaulted.

26  Petitioner's claim that the trial court erred when it designated Goldschlag an expert, that
27 claim fails, because the trial court did not declare Goldschlag an expert. The trial court stated in
28 the jury's presence that it agreed with petitioner's belief that Goldschlag was not an expert.

13

1  Because Goldschlag was not designated an expert, petitioner's claim that the "problematic dual
2  role" of percipient witness and expert witness violated his right to due process fails.
3  Consequently, petitioner is not entitled to federal habeas relief on this claim.

### B.     Testimony by Arlas

At petitioner's trial, the prosecutor presented the testimony of attorney Arlas, who specialized in mortgage banking law and had been retained as outside litigation counsel for Greenpoint (Ex. E at 15). Arlas had reviewed the correspondence sent to Greenpoint by petitioner and Burgarella, and he had drafted the response from the company characterizing them as "legal nonsense" (*ibid.*). At the prosecutor's request, and with no objection by petitioner, Arlas was deemed an expert in the area of mortgage banking and mortgage banking laws (Ex. C at 4320, Ex. E at 15). After Arlas testified that he had seen "several of these types of schemes, scams, going on," petitioner lodged a belated objection to Arlas's qualification as an expert (Ex. C at 4322-24, Ex. E at 15). Petitioner complained that he had not been given notice that Arlas would be testifying as an expert and that Arlas had a conflict of interest because he represented a victim in the case (Ex. C at 4323-24, Ex. E at 15). The trial court overruled the objection (Ex. C. at 4326, Ex. E at 15). Petitioner alleges that Arlas's dual role as both percipient witness and expert witness unfairly bolstered his credibility in the eyes of the jury and added undue weight to his opinions (Compl. at 17-19). Petitioner also alleges that Arlas's testimony regarding seeing "several of these types of schemes, scams, going on," was tantamount to an improper opinion that Burgarella and petitioner were guilty of a crime (*id.* at 19-20).

The Court of Appeal found that the trial court had not abused its discretion in allowing Arlas to testify as both an expert and a percipient witness (Ex. E at 15). The Court of Appeal found that it was not likely that the expert designation would cause the jury to unduly credit Arlas's testimony about factual matters when those matters concerned the correspondence between Burgarella and Greenpoint, and were essentially uncontroverted (*id.* at 16). In addition, petitioner did not suggest any way in which his cross-examination of Arlas was inhibited, and Arlas's expert testimony concerning the legal effect of certain documents was clearly based on his understanding of the law as an expert in that field, and not on facts tied to this particular case

14

(*ibid.*).  The Court of Appeal also found that Arlas's testimony regarding having seen "several of these types of schemes, scams, going on" did not constitute an improper opinion that petitioner was guilty of the charged offenses (*id*. at 16-17).  The testimony was a comparison between Burgarella's correspondence and that received from third parties, and this comparison did not comment directly on petitioner's culpability (*id*. at 17).  And in any event, in light of the overwhelming evidence of guilt, it was not reasonably probable that petitioner would have obtained a more favorable result in the absence of Arlas's comment (*ibid.*).

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).

As the Court of Appeal found, there was no likelihood that the jury would have been confused by any interplay or overlap between the expert aspect and percipient witness aspect of Arlas's testimony.  The facts he testified to as a percipient witness, namely the documents and correspondence sent between himself and Burgarella (and therefore petitioner), were essentially uncontroverted.  It was also clear to the jury that his experience as a mortgage banking lawyer provided the foundation for his expert opinion as to the legal effect of certain documents.  Petitioner has not shown that a constitutional guarantee was violated, or that any error was of such magnitude that the result was a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d at 1031.

In addition, the United States Supreme Court has also left open the question whether the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact.  *See Moses v. Payne,* 555 F.3d 742, 761 (9th Cir. 2009).  Thus, while, under Ninth Circuit precedent, it is "well established . . . that expert testimony concerning an ultimate issue is not per se improper," *id.* (quotation and citation omitted), for purposes of habeas corpus review it suffices to determine that no Supreme Court case has squarely addressed

15

the issue and, therefore, a state appellate court's decision affirming the admission of such testimony is not contrary to or an unreasonable application of clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)(1). *See id.* at 761-62; *see also Briceno v. Scriber*, 555 F.3d 1069, 1078 (9th Cir. 2009) (habeas relief not available under § 2254(d) for claim that expert's opinion testimony as to whether hypothetical robberies would have been gang-related should have been excluded because it pertained to the ultimate issue for the jury).

Petitioner's challenge to the admission of Arlas's testimony that he had seen "several of these types of schemes, scams, going on" also fails. This testimony does not amount to an improper opinion on a question for the jury because Arlas was merely comparing the correspondence he received from Burgarella and petitioner to the correspondence he received from third parties. A "scheme" or a "scam," moreover, does not necessarily equate to the violation of any particular criminal statute. However, even if the testimony did concern an ultimate issue to be resolved by the trier of fact, habeas relief is not available on such a claim. *See Moses,* 555 F.3d at 761-62.

The trial court did not impermissibly designate Arlas as an expert, and Arlas's testimony did not confuse the jury or otherwise unduly influence the jury's verdict. Consequently, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

### 4. Prosecutor's Failure to Disclose Intent to Seek an Expert Designation

Petitioner claims that the prosecutor violated his Fourteenth Amendment right to due process when he failed to disclose to the defense that he intended to call Goldschlag and Arlas as expert witnesses and to use their expert designations to elicit opinion testimony on critical elements of the charges (Compl. at 21). Both Goldschlag and Arlas were included on the prosecutor's witness list (Ex. E at 15, 17). The Court of Appeal found that the prosecutor had complied with the appropriate state law discovery statutes by including Goldschlag and Arlas on the prosecutor's witness list, and noted that there is no statutory requirement in a criminal case that the prosecution designate an expert witness as such (*id*. at 14-15, 17).

To the extent that petitioner alleges that the failure to disclose that Goldschlag and Arlas

16

were potential experts violates petitioner's rights to due process, the claim fails. First, as previously discussed, Goldschlag was never designated an expert witness. More fundamentally, because Goldschlag and Arlas were on the prosecutor's list of potential witnesses, petitioner had full and fair notice that they would potentially, if not very likely, be called to the stand. Petitioner does not allege how the defense would have prepared had he known that Arlas would be testifying as an expert and lay witness, and he has not shown that any such change in preparation would have affected the outcome of the trial. Consequently, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

### 5. Handwritten Note Found in Petitioner's Safe

Petitioner claims that his Fourteenth Amendment right to due process was violated when the trial court impermissibly admitted a handwritten list of goals signed by petitioner under his Muslim name. After obtaining a search warrant for the 1912 Dennis Lane residence, the Santa Rosa police obtained this handwritten note from petitioner's safe. The handwritten note stated: "FINANCIAL AS-SAMAD© GOALS 1-5-03[¶] By October 21, 2003 we will have all personal accounts, bank, investment, savings, and any other accounts secured as private. Our personal family af[f]airs will be privately secured and safe. [¶] 1-5-03 As-Samad Abdul Allah El© [¶] FINANCIAL AS-SAMAD© GOALS [¶] We will have Ten Million Plus Dollars (US) $10,000,000.00 by December 31, 2004. We will have our family participating at four thousand U.S. dollars $4,000.00 each a month by April 21, 2005.[¶] 1-5-03 As-Samad Abdul Allah El ©" (Ex. E at 18). When the prosecutor offered to introduce the note into evidence, the trial court sustained petitioner's authentication objection (Ex. C. at 4118, 4120; Ex. E at 17). However, after Burgarella identified the note and testified that the name at the top of it was a name used by petitioner, the trial court admitted the note into evidence as a declaration against penal interest (Ex. C at 4119-4121, Ex. E at 17). Petitioner now claims that the note did not properly qualify as a statement against interest and that the contents of the note were not relevant (Compl. at 23). Petitioner also alleges that the note was impermissibly prejudicial, since it contained the signature of "a Muslim name not unlike the names held by some of the 911 terrorists" (*id*. at 24-25).

17

1    The Court of Appeal found that petitioner had forfeited the relevancy challenge because
2 he did not raise the relevancy challenge in the trial court (Ex. E at 17). Though petitioner had
3 objected to the introduction of the note, he did so solely on the grounds that it was hearsay and
4 had not been authenticated – he did not object as to relevancy (*ibid*.). The Court of Appeal also
5 stated that it would also reject the relevancy argument on the merits (*ibid*.). The note was
6 relevant because it tended to show that petitioner was engaged in a long-term plan to acquire
7 large amounts of money for his family, and because it utilized the copyright symbol after
8 petitioner's name, which corroborated other evidence that he was the person who had devised
9 the plan for extinguishing the mortgage (*id*. at 17-18). In addition, the Court of Appeal rejected
10 petitioner's claim that the note was overly prejudicial simply because petitioner signed it using a
11 name that might identify him as Muslim, since petitioner's religious beliefs played no part in the
12 trial, and there is nothing in the record to suggest that the jurors in this case harbored any
13 prejudice against the Muslim faith (*id*. at 18).
14    Petitioner's relevancy claim is procedurally barred from federal habeas review because of
15 his failure to make the contemporaneous objection at trial. *See Inthavong*, 420 F.3d at 1058.
16 The fact that the Court of Appeal denied the claim on both the merits and on procedural grounds
17 does not change this conclusion. *See Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A
18 state court's application of a procedural rule is not undermined where, as here, the state court
19 simultaneously rejects the merits of the claim").
20    The Court of Appeal did not address petitioner's claim that the handwritten note did not
21 properly qualify as a statement against interest. The statement makes a specific reference to
22 highly aspirational financial goals, and petitioner was charged with several counts of theft-
23 related crimes. The statement is against petitioner's interest because the handwritten note
24 showed his intent to secure a large amount of money in a very short amount of time. Since
25 petitioner used the copyright symbol on this handwritten note, there is also a strong implication
26 that petitioner intended to use his copyright scheme to secure the additional money, which also
27 rendered the note against petitioner's penal interest.
28    Petitioner is not entitled to federal habeas relief on his claim that the admission of his

18

handwritten violated his right to due process.

### 6. Prosecutorial Misconduct During Closing Argument

Petitioner claims that improper remarks by the prosecutor during closing argument violated his right to due process. The first challenged statement occurred when the prosecutor told the jury that "it doesn't matter if this idea or these ideas came from the internet, from a book, from a seminar or from a cereal box. The minute that he took these ideas and he put them into action he broke the law. He committed fraud." (Ex. C. at 5013, Ex. E at 18). The second challenged statement occurred when the prosecutor told the jury that the petitioner "spent most of his time concocting plots to get money without doing any work" and that as for petitioner's stated goal of obtaining $10 million, "[h]e's going to get it by stealing it" (Ex. C. at 5012-13, Ex. E at 18-19). The third challenged statement occurred when the prosecutor urged the jury to conclude that the state court, in dismissing petitioner's lawsuit against the deputy district attorney, effectively notified petitioner that he could not copyright his name (Ex. C at 5073, Ex. E at 19).

The Court of Appeal held that since petitioner had not objected to the comments at the trial, and failed to demonstrate that curative instructions would have been ineffective or that timely objections would have been futile, the claims were forfeited on appeal (Ex. E at 19). Because petitioner failed to object to the comments at trial, and because the last reasoned opinion on the claim expressly denied the claim based on California's contemporaneous objection rule, petitioner's claim is procedurally defaulted from federal habeas review. *See Inthavong*, 420 F.3d at 1058.

Consequently, petitioner is not entitled to federal habeas relief on this claim.

### 7. Cumulative Error

Petitioner claims that the cumulative prejudice of the foregoing alleged errors violated his right to due process.

Petitioner cites no Supreme Court precedent, and the court is aware of none, providing that the cumulative effect of multiple alleged errors may violate a defendant's due process right to a fair trial. As discussed above, AEDPA mandates that habeas relief may be granted only if

19

the state courts have acted contrary to or have unreasonably applied federal law as determined by the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. at 412.  In any event, of the six claims of error, only the mistaken jury instruction and the exclusion of the book might have constituted error.  For the reasons discussed above, there was no prejudice from those errors, let alone sufficient prejudice to render the trial fundamentally unfair in violation of due process.

Accordingly, habeas relief is not warranted on this claim.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment close the file.

**IT IS SO ORDERED.**

Dated: December  3 , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.09\ROBISON2202.RUL.wpd